FIRST NATIONAL BANK OF JOLIET *et al.*, Plaintiffs-Appellees and Cross-Appellants, v. THE COUNTY OF GRUNDY, Defendant-Appellant and Cross-Appellee (Goose Lake Association, Intervenor and Defendant-Appellant).

Third District   No. 3—89—0274

Opinion filed May 4, 1990.—Rehearing denied June 15, 1990.

David W. Neal, State's Attorney, of Morris (Judith Z. Kelly, of State's Attorneys Appellate Prosecutor's Office, of counsel), for appellant County of Grundy.

Robert H. Adcock, of Adcock & Dobbs, Ltd., of Morris, and Anthony C. Raccuglia, Cynthia M. Raccuglia, and James A. McPhedran, all of Anthony C. Raccuglia & Associates, of Peru, for appellant Goose Lake Association.

Jack M. Siegel, of Siegel & Warnock, of Chicago, for appellees.

PRESIDING JUSTICE HEIPLE delivered the opinion of the court:

This action was brought by the subdivider of the proposed Botomika subdivision seeking judicial review of the Grundy County Board's (the Board's) denial of the subdivider's preliminary plat. The Goose Lake Association, a group of 600 owners or residential lots in subdivisions adjoining the proposed Botomika subdivision, was granted leave to intervene as a defendant. The three-count complaint sought the following relief: count I sought a writ of *mandamus* to force the county into approving the preliminary plat of the subdivision; count II sought relief under section 1983 of the Federal Civil Rights Act (42 U.S.C. §1983 (1979)); and count III sought a declaratory judgment declaring that the subdivider was entitled to have the preliminary plat of the subdivision approved by the county. Prior to trial, the defendant Grundy County was granted summary judgment on count II. Following a bench trial, the trial court found that the plaintiff subdivider was entitled to relief under counts I and III, and directed issuance of a writ of *mandamus* addressed to Grundy County mandating approval of the preliminary plat of Botomika subdivision. Defendant Grundy County and intervenor Goose Lake Association seek reversal of the trial court's findings with regard to counts I and III. The subdivider cross-appeals the trial court's decision to grant the defendant summary judgment on count II. We reverse and remand the trial court decision with respect to counts I and III.

The proposed Botomika subdivision is located in a region known as the Goose Lake area in Grundy County, Illinois, which comprises approximately 10 subdivisions and includes three lakes. The proposed Botomika subdivision consists of 53 lots located on 96 acres which is immediately adjacent to Lincoln Lake, the largest of the three lakes

within the development. On September 4, 1987, an application for approval of a preliminary plat of a subdivision for the Botomika site was submitted to the Grundy County Planning Commission (hereinafter Planning Commission). The preliminary plat of the subdivision was reviewed by Gene Shoshtrum, the director of environmental health for Grundy County. Based upon Shoshtrum's recommendation, the subdivider revised his original plan to include the installation of drain tiles, in an effort to lower the water table.

Public hearings were then held before the Planning Commission on the proposed subdivision in October and November of 1987. During the course of these proceedings, evidence was heard from the subdivision developer and Richard Schweickert, a civil and registered engineer in charge of the design of the subdivision. Also testifying were Gene Shoshtrum on behalf of the Grundy County Health Department and Larry Pachol on behalf of the building and zoning department of Grundy County. Additionally, the intervenor, Goose Lake Association, actively participated in the hearings before the Planning Commission and produced the testimony of David Hahn, a registered professional engineer.

After hearing all of the aforementioned testimony, the Planning Commission voted to reject the preliminary plat and formally notified the Grundy County Board, in part, as follows:

"It is our opinion after listening to the testimony, particularly the testimony of the engineers from both sides, that the subdivision as designed contains inadequate drainage facilities which creates a substantial risk that septic effluent will be drained into Lincoln Lake. In our opinion this will increase the danger to the health and safety of the residents of the subdivision and the surrounding residents as well. Were Lincoln Lake to become polluted, property values in that area would be substantially diminished. *The Planning Commission rejected the preliminary plat based on Section IV—C—11 of the Grundy County Subdivision Regulations.* *** It was the opinion of the Planning Commission that the design of the draining system, given the relatively high density of the proposed development, threatens the pollution of the lake and the health and property of all concerned." (Emphasis added.)

Section IV(c)(11) of the Grundy County subdivision regulations, which the Planning Commission based its decision on, was adopted and approved as a subdivision ordinance by the Grundy County Board pursuant to its statutory authority to promulgate reasonable regulations governing subdivision plats. (Ill. Rev. Stat. 1987, ch. 34, par. 414.)

Section IV(c)(11) of the subdivision regulations of Grundy County provides in part:

> "No land will be approved for subdivision which is subject to periodic flooding or which contains inadequate drainage facilities or other topographic conditions which may increase danger to health, life, or property or aggravate erosion or flood hazard unless the subdivider agrees to make improvements which will, in the opinion of the County Engineer and Plan Commission, make such land safe for development and occupancy."

Thereafter, on December 8, 1987, the Grundy County Board, after considering the recommendation of the Planning Commission, position papers on behalf of the Goose Lake Association and the subdivision developer, and transcripts of the proceedings before the Planning Commission, voted to reject the preliminary plat.

The subdivider then filed a three-count lawsuit against Grundy County. Following a hearing, the trial court granted Grundy County's motion for summary judgment on the Federal Civil Rights Act claim (count II), but denied all other motions for summary judgment. The transcript of the proceedings before both the Planning Commission and the county board were received by the trial judge in his consideration on the motions for summary judgment. The cause then proceeded on April 3, 1989, to a bench trial on the complaint for *mandamus* and declaratory judgment (counts I and III). When the county and intervenor attempted to introduce the transcript of the Planning Commission and the county board at the bench trial, the trial judge sustained the subdivider's objection and refused to let the transcripts in. The trial court proceeded to conduct a trial *de novo* and made the following findings:

> "Now, I don't have any doubt that the plan commission and the County Board acted in good faith when the specter of the pollution of the lake was raised by Mr. Hahn. However, they have not had the benefit of the detailed testimony and probing cross-examination by these excellent attorneys that I have had over the past four days, and I believe that all the questions these gentlemen may have raised have been answered. All the credible expert testimony shows that the Botomika subdivision, modified as requested by County officials Shostrum and Pachol, present[s] no danger of pollution to the lake."

In view of our disposition of this appeal, it is unnecessary to set forth the lengthy testimony that was presented at the bench trial. The focus of this court's inquiry on appeal will be to address two questions: (1) did the trial court follow the proper standard of review in

ruling on each count; and (2) did the trial court consider the proper evidence in ruling on each count?

■ Count I sought a writ of *mandamus* in order to force the Grundy County Board to approve the preliminary plat of the Botomika subdivision. It is well settled that a writ of *mandamus* cannot be granted unless there is a clear legal right to the performance demanded. (*People ex rel. American National Bank & Trust Co. v. City of Park Ridge* (1960), 25 Ill. App. 2d 424.) Further, *mandamus* may not be used to force a public body to exercise its discretion in a particular manner unless the public body has abused its discretion, and, if there is any doubt as to the propriety of the exercise of the discretion, courts favor a denial of a writ of *mandamus*. (*Brown v. City of Joliet* (1969), 108 Ill. App. 2d 230.) The county relies heavily on the *Brown* decision to support its position that the trial court applied the incorrect standard of review in issuing the writ of *mandamus*. We agree that the facts of *Brown* are analogous to the instant case.

In *Brown*, review was sought of the trial judge's issuance of a writ of *mandamus* to the Joliet city council directing approval of a subdivision plat. Similarly, in *Brown*, the City of Joliet passed an ordinance, pursuant to a statutory grant of authority, which provided that " 'every subdivision shall be provided with a storm or surface drainage system adequate to serve the area being platted.' " (108 Ill. App. 2d at 233.) The *Brown* court found that the Joliet city council, in determining that the plat submitted was not in conformity with the ordinance, properly exercised its discretion. In finding that the writ of *mandamus* was improperly issued, the *Brown* court stated:

> "[C]ourts are so careful of encroaching in any manner upon the discretionary powers of public officials, that if any reasonable doubt exists as to the question of discretion or want of discretion, courts will hesitate to interfere." *Brown*, 108 Ill. App. 2d at 236.

■ Likewise, in the instant case, the Grundy County Board passed section IV(c)(11) of the subdivision regulations of Grundy County pursuant to the statutory authority granted the county under section 25.09 of "An Act to revise the law in relation to counties" (Ill. Rev. Stat. 1987, ch. 34, par. 414). Section IV(c)(11) necessarily grants the county board the discretion to determine whether a subdivision plat contains adequate drainage facilities. The Grundy County Board, in ruling on whether the Botomika subdivision plat had adequate drainage facilities, took into consideration the detailed testimony that both parties presented during the two Planning Commission hearings. Thus, in accord with *Brown*, the Grundy County Board had the dis-

cretion to deny the preliminary plat of the Botomika subdivision. Consequently, we find that the proper standard of review on the *mandamus* count was whether the Grundy County Board abused its discretion in denying the preliminary plat.

In determining whether there was an abuse of discretion as to count I, Circuit Judge Richard Wilder should have only considered the record of the proceedings before the Planning Commission and the Grundy County Board. Instead, the trial court excluded the transcripts of these proceedings at the bench trial, and conducted a trial *de novo* on count I. Hence, the trial court substituted its judgment for that of the Grundy County Board and stated that the county board did not have "the benefit of the detailed testimony and probing cross-examination by these excellent attorneys" that the trial court was privy to during the four-day bench trial. This was clearly error. A writ of *mandamus* will not issue when the effect of compliance is to "substitute the court's judgment or discretion for that of the body which is commanded to act." (*People ex rel. Walsh v. Board of Commissioners* (1947), 397 Ill. 293, 305.) Therefore, we reverse and remand count I, for a determination of whether the Grundy County Board abused its discretion in denying the preliminary plat, based solely on an examination of the proceedings before the Planning Commission and the county board.

Next, we address the issue of whether the trial court properly granted Grundy County's motion for summary judgment on count II, the subdivider's section 1983 civil rights claim. In ruling on the motions for summary judgment, the trial court had been tendered the transcripts of the proceedings before the Planning Commission and the county board. After taking note of the proceedings before the Planning Commission, the trial court agreed with the county's contention that a civil rights action did not lie in a case where a public body makes a decision, based on a legitimate dispute between experts. In order to bring a civil rights claim, the plaintiff must allege and prove that the denial of the preliminary plat was an arbitrary and unreasonable decision bearing no substantial relationship to the public health, safety, or welfare. (*Burrell v. City of Kankakee* (1987), 815 F.2d 1127.) The Planning Commission, after listening to the testimony of engineers from both sides, gave its recommendation to the Grundy County Board, stating: "It was the opinion of the Planning Commission that the design of the draining system, given the relatively high density of the proposed development, threatens the pollution of the lake and property of all concerned." Subsequently, the Grundy County Board, after considering the recommendation of the Planning Com-

mission, position papers from both sides, and transcripts of the proceedings before the Planning Commission, decided to deny the preliminary plat. We cannot find that the trial court was incorrect in ruling that no evidence was produced to show that the county board acted in an arbitrary and unreasonable manner. Therefore, we affirm the trial court's decision to grant summary judgment on count II.

Finally, with respect to the declaratory judgment claim (count III), we reverse and remand. Count III seeks to have section IV(c)(11) of the subdivision regulations of Grundy County declared unconstitutional as applied to the subdivider. The issue presented in a declaratory judgment claim has been delineated by the Illinois Supreme Court:

> "[T]he issue is not whether the Board of Appeals or Board of Trustees of the Village erred or abused their discretion but whether the restriction as applied to Plaintiff's property is arbitrary, unreasonable and without substantial relation to the public health, safety, comfort, morals and general welfare." (*Stemwedel v. Village of Kenilworth* (1958), 14 Ill. 2d 470, 474.)

We believe that the trial court failed to consider this issue in the instant case. The trial judge's order stated that the declaratory judgment claim was granted "for reasons set forth in the oral opinion of the court of April 6, 1989." Yet, in those oral findings, the trial judge did not rule that the application of section IV(c)(11) was unreasonable in the instant case. Rather, the trial court merely determined that based on all of the testimony presented during the four-day trail, the preliminary plat of the Botomika subdivision met all State and county requirements and presented no danger of pollution to Lincoln Lake. Thus, the trial court simply weighed the evidence instead of applying the "arbitrary and unreasonable" standard.

On remand, we direct the trial court to determine whether section IV(c)(11) was arbitrary and unreasonable as applied to the subdivider. In applying this standard of review to count III, the trial court should exclude the record before the Grundy County Board and base its decision solely on the evidence presented during the bench trial. (*Knor v. County of Madison* (1986), 151 Ill. App. 3d 767.) This procedure ensures that in declaratory judgment actions defendants are permitted to present primary and direct evidence for assessment and evaluation by the trial court in accordance with the protection accorded by judicial proceedings. *Smith v. County Board* (1980), 86 Ill. App. 3d 708.

Lastly, we address whether the trial court erred in excluding the testimony of defendant's expert witness, Donald Eddy, at the

commencement of trial. The plaintiff first learned that defendant planned to call Mr. Eddy on the Friday afternoon before Monday's trial. In excluding Mr. Eddy's testimony, the trial court stated:

> "I have made it specifically clear that everyone should have their experts disclosed and all you gentlemen told me that everybody has been deposed; there is nobody being held back; it is all out on the table. Now, here on the eve of the trial we have got the disclosure of a very material witness and it is just not fair."

We find that based on these circumstances the trial court was within its discretion in excluding Mr. Eddy pursuant to Supreme Court Rule 220, which governs the disclosure of expert witnesses. 107 Ill. 2d R. 220.

In summary, we reverse and remand count I for a determination of whether the Grundy County Board abused its discretion in issuing a writ of *mandamus*. Additionally, we reverse and remand count III to determine whether section IV(c)(11) was unconstitutionally applied to the subdivider. We affirm the trial court with respect to count II.

Affirmed in part; reversed and remanded in part.

SCOTT and STOUDER, JJ., concur.