FREESEN, INC., Plaintiff-Appellee and Cross-Appellant, v. THE COUNTY OF McLEAN *et al.*, Defendants (The Village of Downs, Defendant-Appellant and Cross-Appellee).

Fourth District    No. 4—93—0606

Argued January 18, 1994.—Opinion filed March 3, 1994.—Rehearing denied April 18, 1994.

Mercer Turner (argued), of Law Office of Mercer Turner, P.C., of Bloomington, for appellant.

Larry D. Kuster, of Rammelkamp, Bradney, Dahman, Kuster, Keaton & Fritsche, of Jacksonville, Robert J. Lenz, of Bloomington, and Edward J. Kionka (argued), of Southern Illinois University School Of Law, of Carbondale, for appellee.

JUSTICE LUND delivered the opinion of the court:

This appeal by the Village of Downs (Village) arises from an order of the circuit court of McLean County granting plaintiff's motion for summary judgment and holding the McLean County zoning ordinance prohibiting plaintiff's use of land for an asphalt plant was unreasonable and arbitrary and bears no reasonable relation to public health, safety, morals, or welfare. Because relief was granted by summary judgment, it necessarily follows that the trial court decided there was no existing question of fact. See *Smith v. Rengel* (1981), 97 Ill. App. 3d 204, 206, 422 N.E.2d 1146, 1148.

Plaintiff Freesen, Inc., cross-appealed from an order of the trial court allowing the Village to intervene.

## FACTS

Plaintiff desires to construct an asphalt plant in a gravel-pit area located across Interstate 74, but within $1^1/2$ miles of the Village. The gravel-pit area and the Village are located in McLean County (County). County zoning limited the gravel-pit area to agricultural use.

Plaintiff initially requested, by petition to the McLean County Zoning Board of Appeals (Zoning Board), a zoning change from "A-Agriculture District" to "M-2 General Manufacturing District." The Zoning Board heard testimony and received documents from plaintiff and other parties, including representatives of the Village. The Zoning Board recommended to the McLean County Board of Supervisors (County Board) that the variance sought by plaintiff be approved. The County Board voted 13 to 3 against plaintiff's request.

## CIRCUIT COURT PROCEEDINGS

On July 21, 1992, plaintiff filed a complaint against the County alleging, in count I, deprivation of the highest and best use of plaintiff's property, with such prohibition bearing no reasonable relationship to public health, safety, morals, and welfare, and a violation of plaintiff's rights guaranteed by the fourteenth amendment of the Constitution of the United States (U.S. Const., amend. XIV).

On August 11, 1992, the County entered its appearance without answer or other pleadings. Plaintiff filed a motion for summary judgment as to count I the next day, accompanied by an affidavit of O. Robert Freesen, chairman of plaintiff's board, which affidavit incorporated the findings of fact and recommendations of the Zoning Board.

The summary judgment motion was noticed for hearing for August 17, 1992, and, on that date, the County filed a three-page response outlining the history of the matter and stating the issue "is a mixed question of fact and law and is inappropriate for resolution under summary judgment." Plaintiff filed a 28-page memorandum of law on August 17, 1992, and a five-page order was entered the same day granting plaintiff summary judgment. That order stated "use of this property for an asphalt plant is reasonable, and the zoning ordinance which prohibits such a use is unreasonable and arbitrary." The order also stated the "parties agree that there is no genuine issue of material fact and only a question of law is presented to the Court."

On August 28, 1992, the Village petitioned to intervene and, on September 8, 1992, the County filed a motion to reconsider the summary judgment order. After various other pleadings and arguments on June 2, 1993, the circuit court, in a lengthy opinion, allowed petitioner to intervene and granted the County's motion to reconsider, thereby vacating summary judgment.

On June 14, 1993, after plaintiff's motion to reconsider and other pleadings, the trial court reversed itself and reinstated the order for summary judgment in favor of plaintiff. The appeal and cross-appeal followed.

## STANDING TO INTERVENE

We first address plaintiff's contention that the Village does not have standing to intervene. Plaintiff contends the test for standing to intervene by a different governmental unit depends upon a "clear demonstration that it would be substantially, directly[,] and adversely affected in its corporate capacity." (*Village of Barrington Hills v. Village of Hoffman Estates* (1980), 81 Ill. 2d 392, 398, 410 N.E.2d 37, 40.) Plaintiff also complains that the Village's petition was not timely filed. Plaintiff alleges that the Village has failed to meet the standards set forth in *Barrington Hills*. It argues the record in the instant case shows no proof of any direct, substantial, and adverse effects on the Village in its corporate capacity by the proposed change in zoning and use of the land.

The Village's petition to intervene was filed on October 8, 1992 (replacing a previous petition filed in August and withdrawn by the

Village). The petition recounted actions taken by its board of trustees and mayor opposing the zoning-map amendment, and alleged that quality of life by the Village residents, property values within its borders, and its growth and development would be adversely affected should the action of the County Board be overruled by the trial court.

The petition was supported by several affidavits. The allegation that quality of life of Village residents would be adversely affected was supported by an affidavit of Pauline Turner, a resident and trustee of the Village. She stated (1) the operation of plaintiff's asphalt plant makes noise which she hears in the Village and is an annoyance, especially in the early morning hours; (2) the operation of the plant makes an odor of asphalt in the Village which is not pleasing, that she can smell both inside and outside her home; and (3) she believes the plant reduces the quality of residential life in the Village.

The affidavit of Patrick O'Rourke supported the allegation that property values inside Village borders would be adversely affected. He stated (1) he is an associate professor of agricultural economics and agribusiness management at Illinois State University and that one of his teaching assignments is farm real estate appraisal; (2) he has evaluated the effect of M-2 zoning and the location of an asphalt plant near the Village on the proposed site; (3) he is of the opinion that over the last several years most of the nonagricultural development in the Village area has been residential and commercial in nature and that this development will continue; (4) he is of the opinion that the location of an asphalt plant as proposed by plaintiff will tend to reduce the value of adjacent and surrounding real estate in the Village and in areas where it is likely to grow; (5) his opinion is that neither residential developers nor buyers would choose to locate in the area of an asphalt plant and that commercial development would be of a type that would serve residential consumer needs; (6) his opinion is that the site where the asphalt plant is proposed would be suitable for residential development once the gravel extraction has ceased; and (7) prior to the gravel extraction, the site of the proposed plant was used for agricultural production.

The affidavit of Bradley Taylor supported the allegation that Village growth and development would be adversely affected by the asphalt plant location. Taylor, an employee of the McLean County Regional Planning Commission (Commission), stated that (1) on behalf of the Commission he made a review of a recommendation regarding plaintiff's zoning map amendment application and that it is his professional opinion the zoning change sought by plaintiff would be incompatible with nearby residential uses; (2) the M-2 zoning sought by plaintiff is inconsistent with the preliminary development

plan prepared by the Commission for the County; (3) the plan provides for an Interstate 74 exchange approximately one mile west of the Village, the Village has the potential for substantial commercial and residential growth, and the proposed M-2 zoning could be detrimental to that development by dominating the surrounding area and retarding development; (4) M-2 zoning does not complement commercial and residential zoning; (5) the area sought to be rezoned has substantial other potential uses in commercial and/or residential zoning classifications; and (6) it is more than four miles from the location of plaintiff's asphalt plant to the nearest other parcel of real estate zoned M-2 by the County.

Plaintiff alleges that, at most, the only allegations in the Village's petition which could possibly be relevant to its corporate interest are (1) an allegation that the Village is a zoned municipality—plaintiff disputes that statement and says this would not be pertinent to any of the factors described in *Barrington Hills*; (2) an allegation that the quality of life of Village residents would be adversely affected should the County Board's action be overruled by the trial court; (3) an allegation that property values within Village borders would be adversely affected; and (4) an allegation that growth and development of the Village would be adversely affected. Plaintiff maintains these allegations and affidavits supporting them are general, conclusory, speculative, and unsupported by any evidence.

■ The determination of possible injury in its corporate capacity is the test set forth in *Barrington Hills*, but the facts in that opinion tied the injury to loss of municipal revenue caused by a diminution of property values and degradation of air quality and sound levels, as well as expenditures for additional police and additional expense for clearing litter. (*Barrington Hills*, 81 Ill. 2d at 398, 410 N.E.2d at 40; see also *Village of Riverwoods v. Village of Buffalo Grove* (1987), 159 Ill. App. 3d 208, 211, 511 N.E.2d 184, 186.) Plaintiff would have us read the term "corporate capacity" in *Barrington Hills* as limited to the regular expenditures of the municipality for regular services provided to the residents, not including the less specific function of protecting the community from abuses that might well interfere with quality of life in the community. We do not so interpret *Barrington Hills*. The Village has indicated probable loss of value to real estate because of a decrease in the quality of life in the community. It is implied this loss will affect assessed values of real estate, thus resulting in lower real estate tax revenues for the Village. Intervention is governed by section 2—408 of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—408) and is liberally construed. (*Yusuf v. Village of Villa Park* (1983), 120 Ill. App. 3d 533, 538-39, 458 N.E.2d

575, 580; *Wheeling Trust & Savings Bank v. Village of Mount Prospect* (1975), 29 Ill. App. 3d 539, 541, 331 N.E.2d 172, 174.) The determination of whether a petition is timely is a matter left largely to the sound discretion of the trial court. (*Yusuf*, 120 Ill. App. 3d at 539, 458 N.E.2d at 580.) The Village pleadings indicated a substantial interest involving its corporate capacity. Allowing intervention in this case was certainly not an abuse of discretion.

### PROPRIETY OF SUMMARY JUDGMENT

The motion for summary judgment basically rested its case upon the proceedings before the Zoning Board. However, as recognized in *Anthony v. City of Kewanee* (1967), 79 Ill. App. 2d 243, 223 N.E.2d 738, zoning decisions are, in cases such as this, legislative decisions of the county board, and the zoning board is only a part of that legislative process. The county board is acting in the performance of its legislative function, and the propriety of the exercise of its discretion is not dependant upon the adequacy or sufficiency of its knowledge or of supporting evidence. (*Anthony*, 79 Ill. App. 2d at 249, 223 N.E.2d at 741; *Village of Justice v. Jamieson* (1955), 7 Ill. App. 2d 113, 119, 129 N.E.2d 269, 271; *2700 Irving Park Building Corp. v. City of Chicago* (1946), 395 Ill. 138, 147, 69 N.E.2d 827, 831.) Once the legislative body acts, the question presented in a civil action for declaratory judgment is whether the zoning restrictions as applied to plaintiff's property are arbitrary, unreasonable, and without substantial relation to public health, safety, comfort, morals, and general welfare. *Stemwedel v. Village of Kenilworth* (1958), 14 Ill. 2d 470, 474, 153 N.E.2d 79, 82; *First National Bank v. County of Grundy* (1990), 197 Ill. App. 3d 660, 667, 554 N.E.2d 1089, 1094.

■ The trial court's docket order of June 14, 1993, is as follows:

"Now come the plaintiff by counsel ***, the defendants County of McLean and County Board of the County of McLean by [the assistant] [S]tate's [A]ttorney ***, and the Village of Downs by its counsel *** into open court and this cause has come on for hearing upon the motion of the plaintiff to reconsider the entry of the order on June 2, 1993. The court considered the arguments of counsel and the citations of authority submitted by the parties. The court found that, since this is not an administrative review, the right to a summary judgment on the issue of the constitutionality of the zoning ordinance as applied to plaintiff's particular piece of property is not governed by the evidence produced at the administrative proceedings before the Zoning Board of Appeals but is based wholly upon the documents submitted in support of and in opposition to the motion for summary judgment. The court found that no documents were submitted by the County of McLean and the County Board of McLean County in opposition to the mo-

tion for summary judgment and that the affidavits filed in support of the motion for a summary judgment do establish that there is no genuine issue of material facts and that the subject tract of property is not suitable for agricultural purposes due to the lack of top soil, the presence of gravel about the site, the excavation for the gravel pit on the site[,] and the changes of elevation which make its use for agricultural purposes impossible and that maintaining its zoning solely for agricultural purposes deprives the plaintiff of the use and benefit of its property. The motion was allowed in part.

IT WAS ORDERED that the portion of the June 2, 1993[,] order vacating the summary judgment be vacated and that the summary judgment in favor of the plaintiff be reinstated."

It appears from this June 14, 1993, order that the trial court was basically concerned with the lack of suitability of the gravel pit for agricultural purposes. Emphasis was placed upon deprivation of use of the property. No mention is made as to whether the restriction as applied to plaintiff's property is arbitrary, unreasonable, and without substantial relationship to public health, safety, comfort, morals, and general welfare. In changing zoning, there is more involved than the economics of use of certain property.

Regardless of the reasoning, the June 14, 1993, decision must be reversed on another ground. A trial court in a declaratory judgment action challenging the constitutionality of a zoning ordinance should not consider testimony given before a zoning body. (*Yusuf*, 120 Ill. App. 3d at 543, 458 N.E.2d at 583.) The validity of the ordinance is presumed, and that validity does not depend upon evidence presented to the advisory zoning board. Transcripts of testimony are, at best, secondary evidence and hearsay (*Anthony*, 79 Ill. App. 2d at 249, 223 N.E.2d at 741; *Knor v. County of Madison* (1986), 151 Ill. App. 3d 767, 773, 502 N.E.2d 1063, 1067) and inadmissible. Here, the evidence made part of the summary judgment motion was the information from the Zoning Board hearing.

In the declaratory judgment hearing both defendants, the County and the Village, were entitled to confront primary or direct evidence and to present evidence contradicting plaintiff's evidence indicating arbitrary and unreasonable application of the ordinance. The summary judgment in this case was improper.

The trial court's order granting summary judgment is reversed, and its order granting intervention by the Village is affirmed.

Affirmed in part, reversed in part, and remanded.

McCULLOUGH, P.J., and KNECHT, J., concur.